# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AGILENT TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 23-198-CJB |
| | ) | |
| AXION BIOSYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Brian P. Egan and Travis J. Murray, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Peter J. Chassman, Michael J. Forbes, and Hallie H. Wimberly, REED SMITH LLP, Houston, TX; Anna M. Targowska, Allison M. Haas, and Jacob M. Stone, REED SMITH LLP, Chicago, IL; Paul J. McDonnell, REED SMITH LLP, Pittsburgh, PA, Attorneys for Plaintiff Agilent Technologies, Inc.

John G. Day and Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE; Ryan K. Walsh, Geoffrey K. Gavin, and Laura M. Kanouse, JONES DAY, Atlanta, GA; Anna E. Raimer, JONES DAY, Houston, TX; David M. Maiorana, JONES DAY, Cleveland, OH, Attorneys for Defendant Axion Biosystems, Inc.

## <u>MEMORANDUM OPINION</u>

March 12, 2026
Wilmington, Delaware

*Christopher J. Burke*
**BURKE, United States Magistrate Judge**

In this patent infringement action filed by Plaintiff Agilent Technologies, Inc. ("Agilent" or "Plaintiff"), Agilent alleges infringement of United States Patent Nos. 7,192,752 (the "'752 patent"), 7,468,255 (the "'255 patent") and 8,026,080 (the "'080 patent" and collectively with the '752 patent and the '255 patent, the "asserted patents"). (D.I. 451 at ¶ 2) Additionally (and particularly relevant to this opinion), Agilent alleges that Axion made false and misleading statements in the advertising of its impedance-based cell assay products regarding the capabilities of those products. (*Id.* at ¶ 8) Presently pending before the Court are Axion's motion for summary judgment on Agilent's false advertising claim (the "False Advertising Motion"), (D.I. 352), and Axion's motion for summary judgment that Agilent is not entitled to monetary damages or damage control costs on Agilent's false advertising claim (the "Damages Motion" and together with the False Advertising Motion, the "Motions"), (D.I. 351). For the reasons set forth below, Axion's False Advertising Motion is GRANTED and Axion's Damages Motion is DENIED as MOOT.[1]

## I.    BACKGROUND

### A.    Procedural Background

Agilent commenced this action on February 23, 2023. (D.I. 1) The instant Motions were filed on July 10, 2025, (D.I. 351; D.I. 352), and fully briefed as of August 29, 2025, (D.I. 425).

### B.    Factual Background

---

[1]    The parties have jointly consented to the Court's jurisdiction to conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings. (D.I. 19)

The Motions relate to Agilent's false advertising claim against Axion, one of Agilent's major competitors in the market for impedance-based cell analysis products. (D.I. 451 at ¶¶ 8, 47; D.I. 397 at ¶ 82; D.I. 430 at ¶ 82) Agilent's false advertising claim is based on statements made on Axion's website and on other materials available on Axion's website about the capabilities of Axion's Maestro software platforms when used in conjunction with its CytoView-Z Plates (the "Maestro Z" or the "Maestro Z platform" or "Axion's products"). (D.I. 451 at ¶¶ 59-60)

For example, one statement that is a focus of Agilent's claim is the following, which can be found on Axion's website: "The simple and sensitive assays of the Maestro Z accurately measure tumor growth and immune cell killing of 3D cancer spheroid models." (D.I. 363, ex. 31 at 1) Axion refers to this as the "Main Maestro Statement." (D.I. 353 at 26 n.8; *cf.* D.I. 91 (the Court, identifying this statement as the clearest allegation of false advertising in Agilent's then-operative complaint)) Additionally, Agilent identifies 15 other statements that can be found on Axion's website, in Axion's Cell Culture Protocol, and in one of Axion's application notes titled "CAR T Cell Potency Assessment with 3D Cancer Spheroid Models" (the "Application Note"), which Agilent also alleges to be false or misleading for similar reasons. (D.I. 357 at ¶ 6 (citing D.I. 363, ex. 30 at ¶ 43); *see also* D.I. 363, exs. 32-35) For purposes of resolving these Motions, the Court will refer to the 16 statements identified by Agilent collectively as the "Maestro Statements." Agilent claims that the Maestro Statements are false or misleading because the Maestro Z platform doesn't actually accurately measure the impedance of 3D spheroids; instead, it believes the impedance measured by Axion's products reflects the impedance only of cells in contact with electrodes on a 2D surface. (*See, e.g.*, D.I. 451 at ¶ 59)

The Court here writes primarily for the parties, and so any additional facts relevant to this Memorandum Opinion will be discussed in Section III below.

## II.    STANDARD OF REVIEW

The Court incorporates by reference the standard of review for summary judgment motions, which it set out in its December 23, 2025 Memorandum Opinion.  (D.I. 470 at 2-4) Additional relevant legal standards will be discussed in Section III below.

## III.    DISCUSSION

Agilent's false advertising claim is brought under Section 43(a) of the Lanham Act.  (D.I. 451 at ¶ 231)  The Lanham Act, in relevant part, provides the following:

> Any person who . . . [makes a] false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).  Thus, in order to prove a false advertising claim, Agilent must prove the following five elements:

> 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011).

With its False Advertising Motion, Axion argues that Agilent has failed to meet its burden in bringing a false advertising claim because Agilent has not provided sufficient evidence

to support the first, second, third, and fifth of these elements. (D.I. 353 at 25-26) And, as a threshold matter, Axion argues that separate and apart from the above-referenced failings, Agilent cannot sustain a false advertising claim because the statements that it bases its claim on are not actionable statements of fact but rather "scientific conclusions about the capabilities of Axion's Maestro impedance products," which are non-actionable statements of opinion. (*Id.*)

However, for the reasons set out below, in resolving the False Advertising Motion, the Court need only address herein the parties' arguments as to the second and fifth of the above-referenced Lanham Act elements. In doing so, it will explain why Axion should prevail on that Motion.

### A.    Element Two:  Actual Deception or a Tendency to Deceive

In its answering brief, Agilent had argued that there was at least a genuine issue of material fact as to the first element of the Lanham Act test, in that there was a dispute of fact as to whether the Maestro Statements were literally false; Agilent had also argued that those statements were actionable statements of fact, and not statements of scientific opinion. (D.I. 392 at 34-37) Below, the Court will assume *arguendo* that Agilent is correct on those fronts.

Thus, the Court begins substantively addressing the False Advertising Motion by turning to the second Lanham Act element—requiring "actual deception or at least a tendency to deceive a substantial portion of the intended audience[.]" *Pernod*, 653 F.3d at 248. Agilent's burden for this element of a false advertising claim depends on two variables: (1) whether Axion's statements are said to be unambiguous and literally false, or ambiguous/literally true but misleading; and (2) the type of relief sought by Agilent. *See CareDx, Inc. v. Natera, Inc.*, Nos. 23-2427, 23-2428, 2025 WL 2480117, at *9 & n.35 (3d Cir. Aug. 28, 2025); *e.g.*, *TRUSTID, Inc. v. Next Caller, Inc.*, C.A. No. 18-172 (MN), 2022 WL 318299, at *7 (D. Del. Jan. 5, 2022), *aff'd*,

5

No. 2022-1433, 2023 WL 2298748 (Fed. Cir. Mar. 1, 2023); *Newborn Bros. Co. v. Albion Eng'g Co.*, 481 F. Supp. 3d 312, 352-53 (D.N.J. 2020).  For a false advertising claim seeking *injunctive relief*, if a plaintiff can prove the statement in question is *unambiguous and literally false*—then actual deception or a tendency to deceive is presumed and need not be proven.  *CareDx*, 2025 WL 2480117, at *9 n.35 (citing *Pernod*, 653 F.3d at 248).  But, "[i]f the message conveyed by an advertisement is *literally true or ambiguous*, however, the plaintiff must prove actual deception or a tendency to deceive[.]"  *Pernod*, 653 F.3d at 248 (emphasis added); *see also Newborn Bros.*, 481 F. Supp. 3d at 352-53.  "In contrast, where a plaintiff seeks only money damages for a Lanham Act violation"—regardless of whether the plaintiff is asserting that the statements are literally false or simply misleading—then "plaintiff must present proof of actual deception." *TRUSTID*, 2022 WL 318299, at *7 & 8 n.12 (citing *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648-49 (3d Cir. 1958)); *see also Newborn Bros.*, 481 F. Supp. 3d at 352-53 ("For injunctive relief, proof of a literally false statement allows the Court to presume deception. . . . On the other hand, for monetary relief, Plaintiff must still prove actual consumer deception even if the claim is based on literal falsity.") (internal citations and quotation marks omitted).[2]

In bringing claims of false advertising against Axion, Agilent seeks both injunctive relief and monetary damages.  (D.I. 451 at 133-34, ¶¶ G-H, L)  Again, the Court will assume *arguendo* here that there is at least a genuine dispute of material fact as to whether the Maestro Statements are literally false.  In this scenario, at least to the extent that Agilent's claim seeks injunctive

---

[2]    All of this said, in responding to Axion's Motions, Agilent takes the position that to the extent it seeks damages in the form of prospective corrective advertising costs, that particular type of damages does not require it to make a showing of actual deception.  (D.I. 392 at 41)

relief and is premised on literal falsity, it would survive the Motion as to this second element of the test for a Lanham Act false advertising claim (because actual deception would be presumed).

That said, in the portion of its answering brief addressing element two, Agilent also seemed to be premising its false advertising claim on an argument that even if the statements at issue are not literally false, they are nevertheless misleading. (D.I. 392 at 38) And so the Court will here assess the sufficiency of the evidence as to whether Agilent can raise a genuine dispute of material fact that actual customer deception occurred (which is what Agilent is asserting has happened here). On that score, for the reasons set out below, the Court agrees with Axion that Agilent has not cited to sufficient evidence to raise a genuine dispute of material fact as to whether any customers were actually deceived by the Maestro Statements.

As an initial matter, the Court notes that actual deception cannot be proven "by arguing how consumers *could* react; it must [be proven by] show[ing] how consumers *actually do* react." *Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228-29 (3d Cir. 1990). In that vein, the relevant inquiry requires the plaintiff to "adduce evidence that 'the public was actually misled or confused'" by the allegedly false or misleading statements at issue. *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1443 (3d Cir. 1994). Courts have typically come to expect a persuasive consumer survey or other customer testimony in order to sufficiently establish that fact, *id.*, though such a survey/testimony is not absolutely required if other evidence of actual customer deception exists, *Newborn Bros. Co. v. Albion Eng'g Co.*, Nos. 24-1548 & 24-3046, 2025 WL 3560164, at *2 (3d Cir. Dec. 10, 2025).

Here, it is undisputed that Agilent did not bring forth a consumer survey or customer testimony in order to support its false advertising claim. (D.I. 353 at 35 (citing D.I. 357 at ¶¶ 41-45, 47)) So what *does* Agilent cite in order to support a finding of actual deception? In its

7

answering brief, Agilent pointed to three types of relevant evidence on this score.  (D.I. 392 at 38)  The Court will address each in turn, explaining why they are insufficient.

First, Agilent cites to certain testimony of its own corporate representative, Dr. Li Leyna Zhao, regarding the purported experience of a prospective customer, Dr. Or-Yam Revach.  (*Id.*)  Dr. Zhao stated that she had heard another of her team members, Ryan Raver, say that during a 2024 trade show, Dr. Revach approached him at Agilent's booth and asked him about Agilent's products' ability to accurately measure tumor characteristics in a 3D spheroid.  (D.I. 363, ex. 36 at 280, 282-84)[3]  Mr. Raver then informed Dr. Revach that Agilent's products did not have that capability.  (*Id.*)  In response, according to Mr. Raver, Dr. Revach said something along the lines of, "But Axion has that capability.  I will do a demo."  (*Id.* at 280)  Dr. Zhao's understanding is that with this statement, Dr. Revach was conveying that she would not consider Agilent's competing product, based on her (allegedly wrongful) view that Axion's product could actually measure spheroid impedance accurately.  (D.I. 401, ex. L at 286)  Agilent argues that this testimony raises a dispute of fact as to whether the Maestro Statements led to actual customer deception, because it shows that Dr. Revach was misled as to the capabilities of the Axion products.  (D.I. 392 at 38; D.I. 363, ex. 30 at ¶ 36)

However, this testimony from Dr. Zhao is double hearsay.  (D.I. 353 at 36)  It is Dr. Zhao's rendering of one set of out-of-court statements (Mr. Raver's statements) about another set of out-of-court statements (Dr. Revach's statements)—all in an effort to try prove the truth of the matter asserted (i.e., that a customer was actually deceived by one or more of the Maestro

---

[3]    In actuality, during her deposition, it seems like Dr. Zhao wasn't even entirely sure that Dr. Revach *was* the person who had interacted with Mr. Raver.  (D.I. 363, ex. 36 at 283)  Instead, Dr. Zhao appeared to note that she had read this fact in a document, and so she believed it to be true.  (*Id.*)

Statements).  Hearsay statements such as this can only be considered on a motion for summary judgment if they are capable of being admissible at trial—and when a movant challenges the consideration of such a statement at the summary judgment stage, the non-movant must explain to the court "the admissible form that is anticipated."  *See Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) (internal quotation marks and citation omitted).  But here, even though Axion argued in its opening brief (as well as in its reply brief) that Dr. Zhao's testimony set out above would be inadmissible double hearsay, (D.I. 353 at 36; D.I. 425 at 19), Agilent made no comment in its answering brief about the admissibility of this evidence, nor of Dr. Revach's availability to testify at trial, (D.I. 392 at 38).  With the non-moving party having done nothing to explain why the testimony at issue would be admissible at trial, then, the Court cannot consider this hearsay evidence at the summary judgment stage.  *See Travillion v. Wetzel*, No. 24-1763, 2025 WL 971669, at *3 (3d Cir. Apr. 1, 2025) ("We have noted that hearsay is admissible at summary judgment, though, [only] if the nonmoving party explains that it can be produced in an admissible form at trial."); *Conard v. Pennsylvania State Police*, No. 20-3644, 2022 WL 58543, at *3 (3d Cir. Jan. 6, 2022) (finding that the district court was right not to consider hearsay statements about what a witness ("O'Connor") said, where the non-movant "has provided no evidence that O'Connor would [] be available for trial and has identified no hearsay exception that would permit [a different witness] to testify as to O'Connor's alleged statement.").

Second, Agilent relies again on the testimony of Dr. Zhao.  (D.I. 392 at 38)  This time, Agilent focuses on the portion of Dr. Zhao's testimony where she talks about how there were "many cases" of customers "indicat[ing] to Agilent that they wanted a product that had the ability to accurately measure tumor growth and immune cell killing of 3D cancer spheroids."

(D.I. 363, ex. 36 at 280-81)  But Dr. Zhao went on to repeatedly emphasize in her testimony that she "could not recall [any] specific case" of customers making this statement, or that she "[didn't] recall the specifics" of such cases.  (*Id*. at 281-82)  This vague testimony amounts to a conclusory assertion backed by no actual facts on the key point in dispute.  It cannot be sufficient, either alone or in conjunction with other evidence, to withstand summary judgment as to the actual deception element.  *See, e.g.*, *PPG Indus., Inc. v. Payne*, No. 3:10-CV-73, 2012 WL 1836314, at *15 (E.D. Tenn. May 21, 2012) (finding at the summary judgment stage that the defendants had not sufficiently established actual deception, where they had presented no consumer surveys and made only "conclusory" arguments as to the element); *Beck v. Boce Grp.*, *L.C.*, Case Number: 04-20683-CIV-COOKE/BROWN, 2005 WL 8155857, at *4 (S.D. Fla. Aug. 24, 2005) (finding that "vague conclusory" testimony to the effect that "[s]ome servers[ . . .] I don't remember the names" left their jobs because of a co-defendant's actions was insufficient to defeat a summary judgment motion); *cf. CareDx, Inc. v. Natera, Inc.*, Civil Action No. 19-662-CFC, 2023 WL 4561059, at *3-4 (D. Del. July 17, 2023) (finding, in resolving post-trial motions, that certain testimony could not support a conclusion that a defendant's advertisements had led to deception of customers, where the plaintiff only put forward "vague [and] conclusory" testimony on the subject).

Third, Agilent asserts that "Axion's own collaborators, Drs. Tonya Webb and Meghan Logun, who Axion stated are 'representative of an Axion customer,' were deceived into believing Axion's product could monitor the impedance of spheroids based on Axion's promotional materials."  (D.I. 392 at 38 (citing D.I. 397 at ¶¶ 67-70))  But that is literally all that Agilent says on the point.  And from the record before it, the Court cannot deem it plausible to conclude that Dr. Webb or Dr. Logun were actually deceived by the Maestro Statements.  That

10

record indicates that Dr. Webb and Dr. Logun are both:  (1) well-trained scientists knowledgeable in the relevant field; (2) who worked firsthand with Axion's impedance-based cell analysis products in their research, in conjunction with Axion; and (3) who, in videos from public webinars that are a part of the record here, are discussing in detail how those products helped them to measure characteristics of 3D spheroids and/or organoids.  (*See* D.I. 363, ex. 38 at 26:10-27:18 (Dr. Tonya Webb discussing how she used Maestro Z platform in her research); *id.*, ex. 39 at 8:35-9:46 (Dr. Logun describing how Axion's Maestro Z platform assisted her research in this regard); D.I. 357 at ¶¶ 25-27; D.I. 401, ex. O at ¶¶ 61-74)  In light of these facts, it strains credulity to suggest that the Maestro Statements deceived these researchers; whatever views they came to regarding Axion's products and their capabilities were surely gleaned from their own extensive research efforts.  (D.I. 425 at 20 (Axion stating that this argument evidences "desperation" by Agilent, in that "Drs. Webb and Logun actually tested Axion's platform, and, in doing so, they successfully monitored characteristics of spheroids and/or organoids using impedance."); *cf. Sandoz*, 902 F.2d at 229-30 (noting that "a target audience's special knowledge of a class of products is highly relevant to any claim that it was misled by an advertisement for such a product"); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 476 (D.N.J. 2009) (finding, after a bench trial, that doctors are "sophisticated, knowledgeable consumers who are not easily misled" and that "committee members responsible for purchasing decisions who have knowledge of, and experience with, the advertised products are not likely to be deceived" when assessing the evidence regarding an implicitly false statement) (citing

*Labware, Inc. v. Thermo Labsystems, Inc.*, No. Civ.A.04–2545, 2005 WL 1541028, at *10 (E.D. Pa. June 29, 2005)).[4]

Therefore, Axion has demonstrated that there is no genuine dispute of material fact that the Maestro Statements did not actually deceive or mislead any Axion customers. And so its False Advertising Motion is granted at element two—to the extent that Agilent's false advertising claim relies on a showing of actual deception.

### B.    Element Five:  Injury

The Court now turns to element five of the Lanham Act test. With regard to this element, Agilent must demonstrate "that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Pernod*, 653 F.3d at 248. This means that "a plaintiff must allege an injury to a commercial interest in reputation or sales[,]" and "ordinarily must show economic or reputational injury flowing directly from [i.e., proximately caused by] the deception wrought by the defendant's advertising[.]" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132-33 (2014). A plaintiff seeking monetary damages (as opposed to injunctive relief) must show actual damages and not just "a mere tendency to be damaged." *TRUSTID*, 2022 WL 318299, at *9 (internal quotation marks and citation omitted); *Bracco Diagnostics*, 627 F. Supp. at 480-81; *Labware, Inc.*, 2005 WL 1541028, at *12; *see also Societe Civile Succession Richard*

---

[4]    Agilent also cites to Dr. Frazier's testimony to the effect that Dr. Webb and Dr. Logun must have been misled, "because of what Axion told them, that they could monitor spheroids." (D.I. 401, ex. N at 532 (*cited in* D.I. 392 at 38 (citing D.I. 397 at ¶ 67))) But Dr. Frazier otherwise testified that he has never spoken to any Axion customer (including Dr. Webb or Dr. Logun), that he does not know what Axion customers actually think about the Maestro Statements, and that he is not aware of why customers were motivated to buy from Axion. (D.I. 357 at ¶ 45; D.I. 397 at ¶ 45; *see also* D.I. 361, ex. 10 at 558, 560, 564) And so this portion of his cited testimony cannot be sufficient evidence demonstrating that Dr. Webb and Dr. Logun were actually deceived by the Maestro Statements in some way.

*Guiono v. Beseder Inc.*, No. CV 03–1310–PHX–MHM, 2007 WL 3238703, at *6 (D. Ariz. Oct. 31, 2007) ("While a finding of literal falsity does support a presumption of actual confusion among consumers, this presumption does not somehow demonstrate that [a plaintiff] was damaged by such confusion[.]"), *aff'd sub nom. Societe Civile Succession Guino v. Renoir*, 305 F. App'x 334 (9th Cir. 2008), *as amended on denial of reh'g* (Apr. 1, 2009).  That said, "[e]ven when a plaintiff cannot quantify its losses with sufficient certainty to recover damages, it may still be entitled to injunctive relief . . . (assuming it can prove a likelihood of future injury)[.]" *Lexmark*, 572 U.S. at 135.

In attacking the sufficiency of Agilent's false advertising claim, Axion argued in its opening brief that the record is devoid of any evidence that Axion's statements caused or would cause Agilent any injury whatsoever.  (D.I. 353 at 38)  Relatedly, it noted that Agilent's damages theory is not based on any lost sales or reputational damage, and instead focuses solely on prospective corrective advertising costs (that is, on advertising that Agilent says it will have to do in the future to undo the harm that the Maestro Statements have left in the market).  (*Id*. (citing D.I. 357 at ¶¶ 54-55))  Axion asserts that such a damages theory is insufficient to demonstrate an actionable injury under the Lanham Act.  *Id.*

In response, in its answering brief, (D.I. 392 at 40), Agilent cited to Third Circuit caselaw for the proposition that in order to show economic injury pursuant to this element, the law "does not place upon the plaintiff a burden of proving detailed individualization of loss of sales" as "[s]uch proof goes to quantum of damages and not to the very right to recover." *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 922 (3d Cir. 1990); *see also Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp*., 441 F. Supp. 2d 695, 722 (M.D. Pa. 2006); *Accu-Sort Sys., Inc. v. Lazerdata Corp*., 820 F. Supp. 928, 931 (E.D. Pa. 1993).  From

13

there, Agilent stated that it had in fact sufficiently "offered testimony related to the harm [it] suffered as a result of Axion's false statements[,]" and that this evidence is what "satisfies the injury element."  (D.I. 392 at 40 (citing D.I. 397 at ¶¶ 63-65, 80-82))  Agilent also noted that it is "undisputed that [it] and Axion are in direct competition[,]" (*id.* (citing D.I. 397 at ¶ 82)), and that "[a]s a result, it is reasonable to imply any sale resulting from Axion's statements were diverted from Agilent, or, at a minimum, would create a fact issue[,]" (*id.*).

The problem with Agilent's argument here is that the facts it cites to in order to demonstrate "the harm [it] suffered as a result of Axion's false statements" and to show "sale[s] resulting from Axion's statements" is the very testimony from Dr. Zhao, discussed above in element two—i.e., testimony that is so vague, conclusory, and/or inadmissible that it cannot be good evidence of anything.  (D.I. 425 at 21-22)  That is, each of the portions of the record that Agilent points to in this regard relates either to:  (1) Dr. Zhao's inadmissible, double-hearsay testimony regarding Dr. Revach; or (2) Dr. Zhao's conclusory, factless assertions about the "many cases" in which customers indicated to Agilent that they wanted a product that had the ability to accurately measure tumor growth and immune cell killing of 3D cancer spheroids (or that demonstrate that Agilent otherwise lost sales to Axion due to the Maestro Statements).  (D.I. 397 at ¶¶ 63-65, 80-81 (*cited in* D.I. 392 at 40) (citing D.I. 401, ex. L at 109, 135-36, 280-81, 286-87, 293, 342))

In sum, in response to Axion's argument regarding the injury element, Agilent had the opportunity to cite to any facts of record that would sufficiently demonstrate that it had been injured or would tend to be injured in a manner proximately caused by the Maestro Statements. And the evidence that Agilent relied on in this regard was clearly insufficient.  That evidence does not reliably indicate any single customer or potential customer who was deceived by the

14

Maestro Statements in a manner resulting in a lost sale for Agilent. And it cannot otherwise be evidence of actual damages here, or that a tendency to be damaged by the statements-at-issue has been shown. *Cf. TRUSTID*, 2022 WL 318299, at *9 ("[T]he Court has found a deficiency in proof as to actual deception regarding the 10% IVR statement, and this frustrates Plaintiff's ability to prove that deception based on that statement caused injury.").

That Agilent cannot demonstrate a genuine dispute of material fact as to the injury element necessarily also dooms its request for prospective corrective advertising damages. (D.I. 392 at 40) Because Agilent is unable to point to sufficient evidence to raise a dispute of fact as to injury, the remedy of corrective advertising costs (which, if available, is meant to be a proxy for remedying any such identified injury) could not be appropriate here. *See e.g.*, *Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, Case No. 16-cv-3059-BAS-AGS, 2020 WL 4747724, at *8 (S.D. Cal. Aug. 17, 2020) ("[T]here must be some evidence that the allegedly false advertising 'likely caused an injury making this [corrective] advertising necessary.'") (citation omitted); *Monahan Prods. LLC v. Sam's E., Inc.*, 463 F. Supp. 3d 128, 146 (D. Mass. 2020) ("[A] corrective advertising award must be tailored to the injury suffered; it is meant only to repair the plaintiff's business goodwill, not to provide a free advertising campaign.").[5]

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Axion's False Advertising Motion and DENIES Axion's Damages Motion as MOOT.[6]  An appropriate Order will issue.

---

[5]    Therefore, Axion's Damages Motion is DENIED as MOOT, as it is relevant only to the extent that Agilent's false advertising claim survived summary judgment, (D.I. 353 at 38-39), which it has not.

[6]    There is also a still-pending portion of Axion's *Daubert* motion regarding Mr. Brian Napper, (D.I. 359), relating to Axion's request to strike certain portions of Mr. Napper's expert reports about damages for Agilent's false advertising claim, (*See* D.I. 497). The Court

Because this Memorandum Opinion may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Opinion.  Any such redacted version shall be submitted no later than **March 17, 2026** for review by the Court.  It should be accompanied by a motion for redaction that shows that the presumption of public access to judicial records has been rebutted with respect to the proposed redacted material, by including a factually-detailed explanation as to how that material is the "kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure."  *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (internal quotation marks and citation omitted).  The Court will subsequently issue a publicly-available version of its Memorandum Opinion.

---

now DENIES that portion of the motion as MOOT, in light of the fact that Agilent no longer has a viable false advertising claim (nor a claim that entitles it to such damages).